ANDERSON, J.,
delivered the opinion of the court.
This is an appeal by Joseph G. Steele, executor of George W. Johnson, deceased, from a decree of the circuit court of Rock-bridge county, pronounced at its July term, 1874, in a cause in which The National Exchange Bank of Richmond was complainants, and Joseph Steele, executor as aforesaid, and others were defendants, which came on and was heard together with the consolidated causes of George W. Johnson’s executor against G. A. White, and White v. Johnson’s ex’or, and Charles T. O’Ferrall v. Johnson’s ex’or.
The questions raised upon this appeal, by the assignment of errors, in the petition, and by appellants’ counsel in argument, are: First. Did Johnson’s executor have a lien upon the whole of the Lexington hotel property, for the purchase money due him?
George W. Johnson in his lifetime, and G. A. White were the owners of the property-each being owner of an undivided moiety. Whether they were joint tenants or tenants in common, or joint tenants of a part, and tenants in common of the residue, by the death of Johnson his part vested in his dev-isees, and the property was held in common by them, and G. A. White, each entitled to an undivided moiety. They had neither unity in interest, time or title, but only in possession. As tenants in common they held by several seizins. They had several titles but unity of possession. One joint tenant may alien to a stranger, and his alienee, and the other joint tenant, will be tenants in common. Joseph G. Steele, as executor, was authorized by Johnson’s will to sell, with the consent of his *wife, and G. A. White. Johnson could give him no authority to sell other than his own interest. He could not authorize him to sell White’s interest, which was an undivided moiety. He could only authorize him to sell his own. White and Steele, executor of Johnson, agreed to sell the whole together, on the following terms: Four thousand five hundred^ dollars to be paid in cash in hand, or within sixty days from the day of sale; out of which William Pole was to be paid $1,300, due him for furniture and other personal property; the residue of cash payment to be paid in equal moieties to White and Johnson’s executor; the residue of the purchase money to be paid in three equal annual instalments, to bear interest from the day of sale; separate bonds to be given for the deferred instalments in equal moieties to G. A. White and J. G Steele, executor of G. W. Johnson, deceased, with undoubted personal security, or if the purchaser elect, secured by lien on real estate, and in either case with the additional security of a lien retained on real property sold.
This agreement seems to have been entered into in contemplation of a sale to a third party. But G. A. White being the highest bidder, at the sum of thirty-two thousand dollars, became the purchaser. What was sold? In fact only the undivided moiety of Johnson’s estate; and that was subject to the prior liens on the hotel, which were to be paid by J. G. Steele, executor, out of his moiety of the first deferred instalment, as stipulated in the agreement. It was in effect a sale to While of only Johnson’s moiety. If the sale had been carried out, he would have paid Steele a moiety of the purchase money after deducting $1.300, to be paid to Pole, and to have required that so much of it should be applied to the payment of the prior liens upon the Lexington hotel, as was necessary to satisfy *and discharge them, and would have received a c< n-veyance from the executor Steele of Johnson’s moiety of the property, which would have invested him in severalty with title to the whole property, without any further grant or conveyance. He could not sell and convey his own property to himself. As tenant in common he was already seized of the title, and held the possession promiscuously with Johnson’s devisees, and when he acquired the title of his co-tenants to their individual moiety, he was seized of the whole in severalty. A sale and conveyance to him of his moiety was unnecessary to invest him with the title and possession, and Johnson’s executor was invested with no power or authority to sell it or convey it to him. He had only authority under the will of Johnson to sell and convey the Johnson moiety, and he and White had mutually agreed to unite in the sale of their respective moieties. If they had sold to a third party Johnson’s executor and While would have been bound upon his compliance with the terms of the sale, to convey to him their respective interests; that is each of them to convey an undivided moiety in the whole. Johnson’s executor could only have conveyed his interest, and White could onlv have conveyed his interest. Neither could have conveyed the interest of the other, because they were invested with no title to it. They agreed to unite in the sale — that is each one to sell his interest, whereby the purchaser would be invested with the whole. It seems they did not find a third party to purchase, who was willing to give as much for the property as White bid. No objection seems to have been made by the executor to White’s bidding, and he became the purchaser from the executor, of Johnsori’s moiety — which was all he had a right to sell — and the executor insisted upon his taking it under his purchase. And being the owner himself of the *other moietv. White became the purchaser of Johnson’s moiety only, and that was what was sold, and a lien upon that, was the additional security, which, by the terms of the agreement, Johnson’s executor was entitled to retain.
*508 If personal security had been given, separate bonds for the deferred instalments were to be given in equal moieties, and even if a third party had become the purchaser, the security would have been to each one, for the proportion of purchase money due him, for his moiety of the property. And as White was the purchaser in reality and effect, only of Johnson’s moiety, he could only have been -required to give security, in the bond to be executed to Johnson’s executor, for the purchase money due him for his undivided moiety. He could not be required to execute bonds to himself with personal security, for his undivided moiety; or if he elected to give security on real estate, it could only be given to secure what was due from him for Johnson’s moiety,, which he had purchased. He could not be required to give it to himself for purchase' money for his moiety of the property, which he did not owe. And consistently with the idea of separate interests, which pervades the whole instrument, each one could retain-a lien on only what he sold, and what he only could convey, and especially is it so, when White, one of the tenants in common, became the1 purchaser, which could only be of Johnson’s moiety, on which only his executor could retain a lien, being the only real property actually sold. For these and other reasons, which might be given, the court is of opinion that Johnson’s executor has not a lien upon the whole of the Lexington hotel property, for the purchase money due him from G. A. White; but only upon the undivided moiety belonging to Johnson’s estate. The first question is therefore answered in the negative.
*The second question, If he did have such lien, was it binding as against Major, the purchaser from White? needs no answer, as he had no lien as against White, on his moiety which he sold and conveyed to Major. At the date of White’s sale and conveyance to .Major, Johnson’s executor had no personal decree against White. He did not obtain his personal decree until the 20th of April, 1868. White was not then the owner of a moiety of the Lexington hotel property. He had before that, to-wit, on the 1st of October, 1867, conveyed it to O’Ferrall and Major, and had received payment in full from Major, and the deed of conveyance was of record. At the date of the personal decree he had no interest in the hotel to which the executor’s lien thereof could attach.
With regard to the third question, “If such lien bound Major, did it bind his judgment creditors?” we need only remark, that as it did not bind Major,1 it could not bind his judgment creditors.
The fourth question raised by appellant’s counsel upon the assignment of errors is, Did the judgment of Johnson’s executor against White bind his Hart’s bottom place as against Sheffey and Coffin, trustees, and Gurnee, beneficiary in the deed of April 20, 1870, from White?
Johnson’s executor obtained a personal decree against White on the 20th of April, 1868, just two years prior to the date of the deed of trust referred to in the question. But that decree had not been duly docketed according to law, and could not bind creditors and subsequent purchasers without notice. In Vest v. Michie, 31 Gratt. 151, we held that whilst the fact of notice may be inferred from circumstances, as well as proved by direct evidence, the proof must be such as to affect the conscience of the purchaser, and must be so strong and clear as to fix upon him the *imputation of mala fides; and this is well supported by authorities which are cited. We also cite approvingly, 2 Minor’s Inst. 887, 2 Ed., where the author says: “The effect of the notice which will charge a subsequent purchaser for valuable consideration and exclude him from the protection of the registry law, is to attach to the subsequent purchaser the guilt of fraud. It is, therefore, never to be presumed, but must be proved, and proved clearly. A mere suspicion of notice, even though it be a strong suspicion, will not suffice.”
In this case it is not pretended that Gurnee, the creditor secured by the deed of trust, had notice or knowledge of the prior judgment or decree against White, the grantor in the deed of trust, in favor of Johnson’s executor. But it is contended that one of the trustees had notice or knowledge of said decree, because he was the judge who pronounced the decree and had written an opinion, which was filed with the papers in Jhat _ cause, which showed that he was familiar with the whole case. It may be conceded that notice to the trustee was in effect notice to the creditor secured by the deed of trust. But, as was held by this court in'Morrison v. Bauseman & Co. and ais., Moncure. P. delivering the opinion of the court, 32 Gratt. 225, 229, “if a trustee in a deed of trust to secure a debt had notice or knowledge of the existence of a judgment against the grantor in the deed of trust at a time anterior to the execution of the deed of trust, but have no remembrance of such existence at the time of such execution, the trust creditor will not be at all affected by such anterior notice or knowledge on the part of such trustee.” In that case it appeared that the trustee, Newman, about a year before the execution of the deed of trust to him and Trout, had notice or knowledge of the existence of said judgment. He was then writing in the clerk’s office of the court *which rendered the judgment, and as deputy or assistant of the clerk, made a copy of it, and signed the clerk’s name to it for the creditor. There was no evidence that he remembered the fact at the time the deed of trust was executed, except what might be presumed from the fact of his having made a copy of it. Upon his examination as a witness, he could not say that he had any recollection about it one way or the other at the time the deed of trust was executed. In that case it was held that the proof of notice was insufficient.
In this case Judge Sheffey, who was made a party, in his answer, says, respondent had no notice whatsoever of any judgment or decree in said transaction; neither did he *509 think of any such judgment or decree, or that the same was in existence at the time he was so engaged as counsel for G. A. White, and when said deed was executed and recorded. His deposition was also taken in the cause, and is to the same effect. Tn the cause above cited, Judge Moncure deduced from the authorities “that if an agent, before the commencement of his agency, receive notice of an unrecorded lien on real estate, of which his principal afterwards becomes purchaser, such notice of the agent will not be imputable to the principal, unless there be very strong evidence, that at the time of the purchase. the agent remembered the fact that he had received such notice.”
Tn order to affect the creditor by the previous notice or knowledge of his agent or trustee, of the existence of a prior unrecorded lien on the real estate which is conveyed for his security, it is necessary that the notice or knowledge should have been given or imparted to the agent in the same transaction, unless one transaction is closely followed by and connected with the other. 2 Lead. Cases,
Part I., p. 134, and the authorities *c.ited. This principle seems to be supported by reason as well as authority. It is not reasonable to hold that a man will recall facts which came to his knowledge in the discharge of his duties as a clerk, or a judge of a court, or a solicitor or counsellor, when years afterward he may be called on to act in a different transaction, and in a different capacity as agent or trustee for another, so as to affect that other, for whom he has become an agent or trustee with notice of such fact. The court is of opinion that there is not sufficient proof of notice to Gurnee, or his trustees, of the existence of the judgment lien of Johnson’s executor to give effect over the ¡ deed of trust upon the Hart’s bottom place.
The fourth and last question, “should Johnson’s executor be compelled to exhaust the lien against Hart’s bottom before proceeding against the hotel?” need not be considered inasmuch as after satisfying the preferred lieu of the deed of trust, there will be nothing left upon which it can act.
This disposes of all the points of error made by appellant’s counsel in his ingenious and able argument, and upon the whole the court is of opinion to affirm the decree of the circuit court.
Decree affirmed.